**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2932

_____

| | | |
|---|---|---|
| Jean A. McIntosh, An Individual, | * | |
| and Harding & Ogborn, P.C., A | * | |
| Partnership of Nebraska and | * | |
| Colorado Professional Corporations, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Nebraska. |
| | * | |
| Pacific Holding Company, and | * | |
| Pacific Holding Company Employee | * | |
| Welfare Benefit Plan, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  April 17, 1997

Filed:  August 8, 1997
_____

Before WOLLMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD,
      Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Jean A. McIntosh and her counsel appeal from a judgment denying their claim
for legal fees for work performed in a tort action to recover from third parties money
that was ultimately reimbursed to Pacific Holding Company Employee Welfare Benefit

Plan (the "Plan"). We reverse the district court and remand for the determination of whether an attorney's fee is appropriate in the circumstances of this case and, if so, what its amount should be.

## I.

This case arises from an auto accident that left Ms. McIntosh's daughter gravely injured. The daughter's medical expenses, exceeding $500,000, were covered under the Plan, which was governed by the Employee Retirement Income Security Act, see 29 U.S.C. §§ 1001-1461. The Plan contract included fairly standard language as to both subrogation and reimbursement rights, but was silent on the subject of attorney's fees. Ms. McIntosh, acting through her attorney, who was hired on a contingency basis, initiated two actions against the tortfeasor, one for herself and one for her daughter. She ultimately settled with two insurance companies for a total of about $250,000, and the suits against the tortfeasor, who was determined to be judgment-proof, were dismissed.

Ms. McIntosh then sued the Plan in federal court seeking a declaratory judgment that the Plan had no reimbursement right to the $250,000. This action did not catch the Plan unaware, because the parties had exchanged correspondence outlining their views on what their respective rights were to any recovery from a third party. The Plan, indeed, had notified the relevant insurance companies by letter of its opinion that any payment to Ms. McIntosh would not relieve them of liability to the Plan, and so the insurance companies paid the settlement into escrow. We ultimately upheld the Plan's right to reimbursement. See McIntosh v. Pacific Holding Co., 992 F.2d 882, 885 (8th Cir. 1993), cert. denied, 510 U.S. 965 (1993).

In the present action, the plaintiffs seek an award of part of the settlement amount as attorney's fees. The district court denied the claim.

## II.

We have recently decided a case that we believe governs the one before us. In Waller v. Hormel Foods Corp., Nos. 96-2080/2231, slip op. at 8 (8th Cir. July 17, 1997), we held that federal common law gives an action for attorney's fees in circumstances like the present ones, and in an amount equal to "the value of [the claimant's] legal services *to the Plan*" (emphasis in original). The district court therefore erred in holding that, as a matter of law, no such fee was available.

The plaintiffs argue in the first instance that the attorney should receive the fee provided for in the contingency contract between Ms. McIntosh and her attorney. But as we noted in Waller, slip op. at 9, this would be appropriate only if the plaintiffs can show that the Plan would have made the same arrangement that Ms. McIntosh did if it had itself engaged a lawyer to pursue a case against the tortfeasor. In the absence of such a showing, the award should be "based on counsel's actual time devoted to the matter." Id. Of course, time devoted to Ms. McIntosh's efforts to defeat the Plan's subrogation rights is not compensable.

In the present case, the Plan asserts that the relevant insurance companies were willing to settle for the policy limits before, or soon after, the litigation against them was begun. If that is so, that fact becomes a relevant datum in determining the appropriate amount of the fee. Because the district court has made no findings on these and other factual matters that may become relevant to the matter of deciding on a proper fee, we must remand the case for further proceedings.

## III.

For the reasons indicated, we reverse and remand for further proceedings not inconsistent with the principles outlined in this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.